UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Crystal Weaver Brown, | ) | C/A No. 5:15-0321-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner of Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). Having carefully considered the parties' submissions and the applicable law, the court *affirms* the Commissioner's decision, as discussed herein.

I.   Relevant Background

   A.   Procedural History

Plaintiff applied for DIB and SSI in January 2012,[1] pursuant to Titles II and XVI of the Act, 42 U.S.C. §§ 401-403, and 380-83, *et seq.*, alleging she became disabled on August 9, 2007. Tr. 190-93. Her applications were denied initially, Tr. 95-98, and upon reconsideration, Tr. 131-

---

[1] Plaintiff applied for SSI and DIB previously in 2008; however, her applications were denied. The date of the prior unfavorable decision was June 10, 2010. Tr. 49-60. Therefore, the period under consideration for the decision now under review is from the date following the June 10, 2010 decision.

34. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 146-49, which was held on August 15, 2013, Tr. 25-45. In a decision dated September 27, 2013, the ALJ found that Plaintiff was not disabled within the meaning of the Act. Tr. 13-24. The Appeals Council denied Plaintiff's request for review on December 18, 2014, making the ALJ's decision the final decision for purposes of judicial review. Tr. 1-6. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on January 23, 2015. ECF No. 1.

    B.    Plaintiff's Background

Plaintiff was born in December 1973. Tr. 211. At the time of the August 2013 hearing she was 39 years old. Tr. 28. Plaintiff completed high school; she has prior work history as a corrections officer, restaurant manager, and therapeutic assistant. Tr. 216-17. In her form disability report, Plaintiff indicated she stopped working on August 9, 2007, because of her medical conditions, which she listed as depression, four herniated discs, bone and joint pain, and nerve damage. Tr. 216.

    C.    The Administrative Proceedings

        1.    Plaintiff's Testimony

Plaintiff appeared with her non-attorney representative for an administrative hearing on August 15, 2013. Tr. 25-45. The ALJ asked Plaintiff if she was familiar with the term res judicata. When Plaintiff stated she was unfamiliar with the term the ALJ explained that in her case, because she had a prior decision in 2010, the ALJ would find Plaintiff had no disability before June 10, 2010, unless Plaintiff had some reason for him not to apply that decision. Tr. 28-29. Plaintiff's representative indicated she planned to adhere to the alleged onset date of August 9, 2007, and to argue the 2010 decision should not apply. Tr. 29.

In response to questions from her representative, Plaintiff testified that she had an on-the-job accident in 2007. Tr. 29. Prior to that she had asthma, in 1997 and 1999 she had surgery on

2

her left foot, and in 2006 she had surgery on her right foot. Tr. 30. Plaintiff also stated that she had problems with her back and had been seen by several doctors. Tr. 30-31.

The ALJ resumed questioning of Plaintiff and asked her what she felt was the main reason she was unable to work. Tr. 36. Plaintiff responded, "Pain." *Id.* When asked pain from what condition, Plaintiff responded: "I have bone pain. I have a right foot that's broke, and when I had the surgery, the bond didn't reconnect where they put the pins at, so that's very painful." Tr. 36-37. Plaintiff testified that she did not know when the pin broke, but she "started noticing pain about three years ago. . . ." Tr. 37. Plaintiff stated that she saw a doctor the prior month who recommended additional surgery to repair the broken pin. *Id.* Plaintiff testified that she sees other doctors to help with pain management. Plaintiff stated that she gets shots in her back and was trying to get a nerve block but her insurance company was "fighting" her. Tr. 38. Plaintiff testified that she was "waiting to get in to see Dr. McKiken[2] so he [could] fix the foot" but would not be able to see him until December because he was "booked up." *Id.* Plaintiff testified she was also seeing another doctor for her arthritis and muscle pain. *Id.*

Plaintiff stated that during a typical day she "[m]ostly lay in a bed" but sometimes she or her children have doctors' appointments. Tr. 39. Plaintiff stated that lately she has had to cancel appointments more often because she has not felt well. *Id.* Plaintiff testified that between 9:00 a.m. and 5:00 p.m. she spends five hours in bed. She stated that she tries to get up to help her mother cook by putting a chair next to the stove. Tr. 39-40. Plaintiff stated that she was teaching her children how to help with the laundry and that she is able to do the shopping. Tr. 40. Plaintiff testified that she drove five hours in a typical week and that driving generally included going to the grocery store or to doctors' appointments. *Id.* Plaintiff stated that she did not watch television or work on a computer because it hurt to sit up. *Id.*

---

[2] Plaintiff was seen by a nurse practitioner at MUSC Health in June 2013 for issues related to right foot pain. The nurse practitioner referred Plaintiff to Dr. McKibbin. Tr. 466-67.

Plaintiff's representative noted a doctor's report indicating that injections were stopped because they were no longer giving Plaintiff relief—not that Plaintiff was being non-compliant. Tr. 41.

        2.       Lay Witness's Testimony

Plaintiff's mother, Walena Brothers Weaver, also testified at the hearing. Tr. 41. She testified that she does most of the household chores because Plaintiff is unable to do them. Tr. 42. The ALJ had no questions for Mrs. Weaver.

        D.       The ALJ's Findings

In his September 27, 2013 decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since June 11, 2010, the period under consideration (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairment: levoscoliosis, degenerative disc disease, and arthritis (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can climb, stoop, kneel, crouch or crawl occasionally and balance frequently. The claimant is also limited to frequent overhead reaching with her upper extremities.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 21, 1973 and was 33 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 9, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 18-24.

II. Discussion

    A. Legal Framework

        1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the

Listings; (4) whether such impairment prevents claimant from performing past relevant work ("PRW"); and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B. Analysis

The gist of Plaintiff's assertions is that she suffers from severe mental limitations of depression and anxiety and the ALJ erred in giving little weight to the only mental residual functional capacity ("RFC") assessment in the record and in failing to include these limitations in

making his RFC determination. Pl.'s Br. 1-2, ECF No. 39. Plaintiff also asserts that she is unable to sit for six hours or walk for two hours and therefore, under the Medical-Vocational Guidelines, she should be deemed disabled due to the erosion of the availability of jobs she can perform. *Id.* at 2. Finally, Plaintiff contends that new evidence submitted to the Appeals Council related to the hardware in her right foot undermines the findings upon which the ALJ based his decision. *Id.* at 3. The Commissioner contends that substantial evidence supports the ALJ's finding that Plaintiff was not disabled and the ALJ properly determined Plaintiff's RFC. Def.'s Br. 10-11, ECF No. 40.

The court notes that the ALJ determined that because an earlier administrative decision denying benefits became final on June 10, 2010, the period under consideration for purposes of his decision began on June 11, 2010. Tr. 16. Therefore, Plaintiff's allegations related to events before June 11, 2010 will not be considered.

    1.    Plaintiff's Mental Impairments

        a.   ALJ's Evaluation of Plaintiff's Mental Functional Capacity

Plaintiff asserts that the "ALJ erred by failing to follow SSA regulations with respect to evaluating mental functional capacity for work resulting from pain." Pl.'s Br. 2. The Commissioner argues that the objective medical evidence does not support Plaintiff's claim that she is disabled due to depression and that the ALJ adequately explained his decision regarding her mental functioning. Def.'s Br. 12.

The regulations provide steps that must be applied in evaluating mental impairments. *See* 20 C.F.R. §§ 404.1520a; 416.920a. The ALJ must follow a "special technique" to determine the severity of a claimant's mental impairments. 20 C.F.R. §§ 404.1520a(a); 416.920a(a). Under the special technique, the ALJ first evaluates the claimant's pertinent symptoms, signs, and laboratory findings to substantiate the presence of a medically determinable mental impairment.

8

20 C.F.R. §§ 404.1520a(b)(1); 416.920a(b)(1). Then the ALJ rates the claimant's degree of functional limitation resulting from the impairment. 20 C.F.R. §§ 404.1520a(b)(2); 416.920a(b)(2). The rating determines whether the claimant's impairment is severe or not severe. 20 C.F.R. §§ 404.1520a(d); 416.920a(d). The ALJ considers four broad functional areas in order to rate a claimant's degree of functional limitation: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3); *see id.* Pt. 404, Subpt. P, App. 1, § 12.00C. The ALJ considers factors such as "the quality and level of [the claimant's] overall functional performance, any episodic limitations, the amount of supervision or assistance [the claimant] require[s], and the settings in which [the claimant is] able to function." 20 C.F.R. §§ 404.1520a(c)(2); 416.920a(c)(2); *see id.* Pt. 404, Subpt. P, App. 1, § 12.00C–H. The ratings for the first three functional areas—activities of daily living; social functioning; and concentration, persistence, or pace—consist of a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4); 416.920a(c)(4). The fourth functional area—episodes of decompensation—uses a four-point scale: none, one or two, three, and four or more. *Id.*

In analyzing Plaintiff's mental impairments, the ALJ determined that Plaintiff's depression/anxiety did not constitute a severe impairment because it "no more than minimally affects the claimant's ability to perform work related activity." Tr. 19. The ALJ noted that Plaintiff "had never sought psychiatric treatment or counseling, and has never been hospitalized [or] treated by a mental health facility." *Id.* As required by the regulations, in his decision the ALJ documented application of the proper technique by incorporating pertinent findings and conclusions as to the degree of limitation in each of the functional areas. The ALJ noted:

> Additionally, although the claimant has been assessed with depression by her primary care provider, this condition has not resulted in more than: mild restriction in her activities of daily living; mild limitations in her social functioning; mild deficiencies of her concentration, persistence, or pace; or any

9

episodes of deterioration or decompensation in work or work-like settings. As a result, the claimant's depression has no more than a minimal effect on the claimant's ability to perform basic work activities and is a non-severe impairment. Of note, the claimant did not allege a mental impairment in her prior filing and reported that she was doing well with her chronic depression, one month after she began treatment.

*Id.*

### b. ALJ's Consideration of Mental Health Opinions

Plaintiff also disputes the ALJ's decision to accord "little weight" to the mental assessment of Dr. Lish. Pl.'s Br. 1. The Commissioner contends that Plaintiff's reliance on the opinion of a one-time examiner is faulty. Def.'s Br. 12.

The regulations require that all medical opinions in a case be considered; the opinion of a treating physician is generally entitled to more weight than the opinion of a non-treating physician. 20 C.F.R. §§ 404.1527; 416.927. However, it is only given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). Under the regulations, if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then consider the weight to be given to the physician's opinion by applying five factors identified in the regulation: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. §§ 404.1527(c)(1)-(5); 416.927(c)(1)-(5); *see also Johnson,* 434 F.3d at 654. However, statements that a patient is "disabled," "unable to work," meets the listing requirements, or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96–5p, 1996 WL 374183, at *5.

On February 24, 2012, R. Allen Lish, Psy. D., of New Hope PPS, LLC, completed a Disability Mental Status Consultation Report on Plaintiff. Tr. 348-50. After obtaining background information from Plaintiff regarding her history and functionality, Dr. Lish administered Plaintiff the Mini-Mental Status Exam and she scored 23 out of 30 possible points. Tr. 349. Regarding Plaintiff's capabilities Dr. Lish noted that Plaintiff's "struggles do limit her activities; but she does seem capable of independent living with proper treatment of her mental health issues." *Id.* Dr. Lish diagnosed Plaintiff with "Mood Disorder Due to a Medical Condition with Major Depressive-Like Episode" and a GAF score of 35. Tr. 350. In his summary Dr. Lish concluded that Plaintiff was "severely depressed at this time and is not a good candidate for employment." *Id.* His prognosis was "guarded even with proper treatment and compliance." *Id.*

The ALJ found that Dr. Lish's opinion was "inconsistent with the claimant's own description of her abilities and with the findings and opinion of her treating physician." Tr. 19. The ALJ referenced the medical source statement completed on June 26, 2012, by Plaintiff's treating physician, Dr. Christopher Wimberly of Summerville Family Practice Associates that found no deficits or limitations related to Plaintiff's depression. *Id.* (citing ex. B9F, located at Tr. 435). The ALJ concluded: "Because Dr. Lish's opinion appears to be based upon the claimant's subjective complaints and is inconsistent with the claimant's own reported abilities and the opinion of her treating physician, it is given little weight." Tr. 19. *See Johnson,* 434 F.3d at 657 (finding physician's opinion that was based on the claimant's subjective complaints could be rejected). In assessing Plaintiff's RFC the ALJ noted that "the state agency psychological consultant's opinion that the claimant did not have a severe mental limitation is consistent with the findings of the primary care provider of no mental limitations." Tr. 22. *See* 20 C.F.R. §§ 404.1527(e)(1)(i),(2)(i); 416.927(e)(1)(i),(2)(i) (State agency medical and psychological consultants "consider the evidence in [a claimant's] case and make findings of fact about medical

11

issues ... [including the claimant's] residual functional capacity," and they "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."); *see, e.g., Gordon v. Schweiker,* 725 F.2d 231, 235 (4th Cir. 1984) (finding that where non-examining sources' opinions are reasonably consistent with the record as a whole, an ALJ may assign significant weight to them); *Johnson,* 434 F.3d at 656–57 (same); *Stanley v. Barnhart,* 116 F. App'x 427, 429 (4th Cir. 2004) (same). Furthermore, even if the allegedly contradictory evidence Plaintiff highlights could support a different result, the court's role is not to second-guess the ALJ's findings. Rather, when "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the . . . ALJ[ ]." *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation omitted).

Upon review of the record, the undersigned finds that the ALJ's conclusion is supported by substantial evidence. The ALJ considered the evidence, the medical opinions of record, and the opinions contained in third-party function reports in making his functional assessment. "Simply because the plaintiff can produce conflicting evidence which might have resulted in a contrary interpretation is of no moment." *Washington v. Astrue*, 659 F. Supp. 2d 738, 753 (D.S.C. 2009) (citing *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)). *See generally Jackson v. Astrue*, 8:08-2855-JFA, 2010 WL 500449, at *10 (D.S.C. Feb. 5, 2010) ("[A]n ALJ is not required to provide a written evaluation of every piece of evidence, but need only minimally articulate his reasoning so as to make a bridge between the evidence and its conclusions.") (internal quotation and citations omitted). Accordingly, the undersigned finds Plaintiff's argument on this point is without merit because the ALJ performed the special technique for assessing the severity of a claimant's mental impairments, and adequately documented his evaluation of Plaintiff's mental impairments and opinions regarding her mental health.

12

2. Reliance on the Medical-Vocational Guidelines

Plaintiff asserts that she is unable to sit for six hours or walk for two hours and therefore, under the Medical-Vocational Guidelines she should be considered disabled. Pl.'s Br. 2. The Commissioner contends "the ALJ reasonably found that Plaintiff's objective medical evidence supported a light and sedentary RFC, and did not support her subjective complaints of disability." Def.'s Br. 17.

The ALJ determined that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can climb, stoop, kneel, crouch or crawl occasionally and balance frequently." Tr. 20. He also limited Plaintiff to "frequent overhead reaching with her upper extremities." *Id.* In making his finding regarding the existence of jobs Plaintiff could perform, the ALJ noted that the additional limitations had "little or no effect on the occupational base of unskilled light work," and a finding of "not disabled" was appropriate under Medical Vocational Rules 202.21. Tr. 23.

The Social Security Regulations define RFC as "what [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1); § 416.945(a)(1). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b); § 416.945(b).

In assessing Plaintiff's RFC, the ALJ considered the entire record and gave legitimate reasons for his assessment. The ALJ specifically cited to the medical evidence in the record, noting a July 2010 MRI of Plaintiff's lumbar spine, treatment records of Plaintiff's orthopedist from September and October of 2011 and March and May of 2012, and the results of a March 2012 consultative examination. Tr. 21. The ALJ also considered the medical opinions and noted the "limitation to occasional climbing, stooping, kneeling, crouching, or crawling takes into

13

account the claimant's allegations of back pain and her limited range of motion in her lumbar spine." Tr. 22. The ALJ "also considered the opinions provided in the third party function reports provided by the claimant's husband, mother, children, and friends." *Id.* The ALJ concluded:

> In sum, the above [RFC] assessment for limited light work is supported by the medical evidence of the claimant's degenerative disc disease, arthritis, and levoscoliosis, as well as the opinions of the state agency consultants, which have been accorded great weight. In light of the claimant's musculoskeletal impairments, I find that the claimant can only occasionally stoop, kneel, and crawl and climb ladders. However, in light of the aforementioned inconsistencies, particularly the evidence that the claimant's symptoms were controlled with medication and therapy, and her retention of full strength and normal gait, I cannot find the claimant's allegation that she is incapable of all work activity to be credible.

Tr. 22. The ALJ's RFC assessment is consistent with the State agency physicians, objective medical evidence, and other record evidence. The ALJ has the duty to weigh the evidence, resolve material conflicts in the record, and decide the case accordingly. *See Richardson v. Perales*, 402 U.S. at 399. The ALJ met his statutory and regulatory obligation to assess all of the evidence in the record. This court may not reweigh the evidence or substitute its own judgment for the Commissioner's, even if it finds the evidence is susceptible to more than one rational interpretation. *See Hays*, 907 F.2d at 1456. For the foregoing reasons, the undersigned finds that the ALJ properly accounted for the effects of Plaintiff's physical impairments and substantial evidence supports the ALJ's conclusion that Plaintiff retained the RFC to perform a range of light work with additional restrictions.

Plaintiff further alleges that her mental limitations affect her ability to maintain attention and concentration which, in turn, makes her nervous. Pl.'s Br. 1. Plaintiff also asserts that she is "limited by certain fumes which can cause [her] to have severe asthma attacks." *Id.* Plaintiff claims that her ability to work in the category of light work "is eroded by [her] combined exertional and non-exertional limitations considered severe." *Id.* The Commissioner argues that "[b]ecause the ALJ properly found that Plaintiff had no limitations that would significantly

reduce the occupational base, he was entitled to rely on the Grids to direct a finding of not disabled." Def.'s Br. 19.

Once an ALJ determines that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See* 20 C.F.R. §§ 404.1520(f)-(g); 416.920(f)-(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). "A nonexertional impairment is one which is medically determinable and causes a nonexertional limitation of function or an environmental restriction." SSR 85–15, 1985 WL 56857, at *2.

As noted in section 1 above, the ALJ properly found that Plaintiff's mental impairments did not constitute a severe impairment. The ALJ also discussed Plaintiff's asthma (in addition to other non-severe impairments) and found that "treatment notes showed that her symptoms were well controlled with medication." Tr. 19. The ALJ found Plaintiff's asthma to be a non-severe impairment and noted:

> [T]here is no documentation that these minor medical problems have imposed recurring vocationally restrictive limitations for a period of 12 continuous months. Consequently, these minor medical problems have imposed no more than a combination of slight abnormalities, which have had no more than a minimal effect on the claimant's ability to work.

*Id.* Additionally, the ALJ determined that he would not include the state agency medical consultant's limitation on exposure to pulmonary irritants finding it was not needed because "the record does not reflect any problems with asthma after the alleged onset date." Tr. 22. The ALJ

did not find that any of Plaintiff's non-severe impairments caused any limitations to her RFC and Plaintiff has failed to demonstrate that this decision was not supported by substantial evidence. Accordingly, the ALJ's use of the grids as a framework to find that Plaintiff was not disabled is not error. *See Smith v. Schweiker,* 719 F.2d 723, 725 (4th Cir. 1984) (finding that although claimant also suffered from depression and anxiety neurosis, his nonexertional impairments did not affect his residual functional capacity therefore application of the grids was appropriate).

### 3. New Evidence Submitted to the Appeals Council

Plaintiff asserts that "new evidence submitted to the Appeals Council undermined the findings upon which the ALJ decision rested." Pl.'s Br. 3. Plaintiff asserts that this alleged "new and material" evidence proves that her former physician's treatment of her foot was unsuccessful and resulted in leaving her in pain. *Id.* The Commissioner argues that the "extra-record evidence submitted by Plaintiff would not reasonable (sic) change the outcome of this case as it fails to show work-related mental or physical limitations or fully corroborate Plaintiff's complaints." Def.'s Br. 18.

Applicable law indicates that when a claimant requests review of an ALJ decision, the Appeals Council "may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to [the ALJ]." 20 C.F.R. § 404.967. The regulations permit claimants to submit additional evidence that was not before the ALJ when requesting Appeals Council review. 20 C.F.R. §§ 404.968, 404.970(b). In such cases, the regulations require that the Appeals Council first determine if the submission constitutes "new and material" evidence that "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b). *See Wilkins v. Sec'y, Dep't of HHS,* 953 F.2d 93, 96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative. *Williams v. Sullivan,* 905 F.2d 214, 216 (8th Cir. 1990). Evidence is material if there is a reasonable possibility that the evidence would

16

have changed the outcome. *See Borders v. Heckler,* 777 F.2d 954, 956 (4th Cir. 1985). When such new and material evidence is submitted, the Appeals Council then "evaluate[s] the entire record including the new and material evidence." *Id.; see also Felts v. Astrue,* No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. May 19, 2012) (quoting *Wiltons v. Sec'y, Dep't of HHS,* 953 F.2d 93, 96 (4th Cir. 1991)). After this evaluation, if the Appeals Council finds that the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record," *id.,* it will grant the request for review and either issue its own decision on the merits or remand the case to the ALJ. 20 C.F.R. §§ 404.967, 404.977(a), 404.979. But, if, upon consideration of all the evidence (including any new and material evidence), the Appeals Council finds that the ALJ's action, findings, or conclusions are not contrary to the weight of the evidence, it can simply deny the request for review. *Meyer v. Astrue,* 662 F.3d 700, 705 (4th Cir. 2011). Nothing in the SSA or the regulations requires the Appeals Council to explain its rationale for denying review. *Id.* Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, the court must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the ALJ's decision. *Id.* at 707.

Here the Appeals Council received additional evidence from Plaintiff that included medical records from South Carolina Diagnostic Imaging, Summerville Family Practice, MUSC, Tri-County Radiology Associates, and Concentra Medical Center. Tr. 5-6 (listing exs. B16F-B21F, B23F, B25F-B26F). The Appeals Council noted that it "considered the reasons [Plaintiff] disagree[s] with the decision and the additional evidence listed on the enclosed Order of Appeals Council." Tr. 1. The Appeals Council considered whether the ALJ's decision was contrary to the weight of the evidence of record and determined that the information did not provide a basis for changing the ALJ's decision. Tr. 2. As for records Plaintiff provided that related to medical

treatment in 2014, the Appeals Council found that because the information related to a period of time after the ALJ's September 2013 decision it did not affect the decision. *Id.*

The court finds that the Appeals Council's determination that the additional evidence that it made part of the record did not provide a basis for changing the ALJ's decision was correct. The radiology report from February 2013 that was submitted to the Appeals Council was the same report that was provided to the ALJ. *Compare* Tr. 453 *with* Tr. 450. That x-ray indicated there was a "hardware fracture of the compression plate." Tr. 450. The ALJ noted that result in his decision. Tr. 21. The ALJ further noted the following:

> As to the claimant's foot pain, radiographic imaging does show hardware fracture. However, the claimant testified that she had severe foot pain beginning in 2010, but she did not report it to a treating physician until June 2012, and then did not follow up after that time. (Exhibit B8F). Further, Dr. Kumar's findings of normal gait and full strength (Exhibit B5F) are inconsistent with the claimant's reports of debilitating pain and activities of daily living of primarily lying in bed.

Tr. 21-22. Because the ALJ considered the very record Plaintiff asserts would undermine the basis for his decision, the additional records do not negate the substantial evidence that supports the ALJ's decision in this case. Furthermore, other records related to Plaintiff's foot that were submitted to the Appeals Council seem to come to a different interpretation than the February 2013 x-ray result. On June 25, 2013, Plaintiff was seen by a nurse practitioner at MUSC complaining of right foot pain with broken hardware. Tr. 466. Plaintiff stated that in 2005 she had bunion repair surgery by a podiatrist and for the "last six years she has had a constant throbbing pain below her two incisions." *Id.* The nurse practitioner noted that Plaintiff exhibited "decreased range of motion, tenderness and bony tenderness" in her right foot and recommended a referral to a physician, custom orthotics, Achilles tendon-stretching exercises, and a prescription for a topical anti-inflammatory drug. Tr. 466-67. New x-rays of Plaintiff's right foot were completed on December 26, 2013 at MUSC with the following findings:

> Frontal, lateral, and oblique views of the right foot demonstrate unchanged lateral plate and screw fixation at the medial aspect of the medial cuneiform and first metatarsal articulation. *No evidence of hardware complication.* There is unchanged joint space narrowing involving the lateral cuneiform and cuboid and their respective metatarsal articulations. *There is no evidence of acute fracture or dislocation.* Claw toe deformities are noted at the second, third and fourth digits. Mild pes planus deformity.

Tr. 465 (emphasis added). These additional records do not contradict the ALJ's findings relative to his determination regarding Plaintiff's foot pain. Accordingly, the undersigned finds that the Appeals Council's treatment of the additional evidence that Plaintiff submitted does not present reversible error.[3]

III.   Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. *See Craig*, 76 F.3d at 589; *see also* 42 U.S.C. § 405(g). Therefore, it is hereby ORDERED that the Commissioner's decision be affirmed.

IT IS SO ORDERED.

August 22, 2016                                     Kaymani D. West
Florence, South Carolina                            United States Magistrate Judge

---

[3] The court notes that additional records submitted to the Appeals Council from Summerville Family Practice dated April 24, 2013 and May 24, 2013, reflect that Plaintiff sought to have her medications changed because she was "desiring to conceive." Tr. 463, 478. While pregnancy is not normally considered a disabling condition, the court questions how a person who testified that she can barely get out of bed during the day due to her impairments and is in too much pain to sit up and watch television or use a computer believes she can care for a baby. *See* Tr. 39-40. Nevertheless, this information was not before the ALJ and did not play a role in his decision that found Plaintiff was not disabled.